## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ASSURED PHARMACY, INC., et al.,[1] | ) | Case No. 15-40389 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### DEBTORS' JOINT PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

> **Nothing contained herein shall constitute an offer, acceptance, or a legally binding obligation of the Debtors or any other party in interest and this Plan is subject to approval by the Bankruptcy Court and other customary conditions. This Plan is not an offer with respect to any securities. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

George H. Tarpley
TBA 19648000
Aaron M. Kaufman
TBA  24060067
**COX SMITH MATTHEWS INCORPORATED**
1201 Elm Street, Suite 3300
Dallas, Texas  75270
Telephone:        (214) 698-7800
Facsimile:        (214) 698-7899

*Counsel to Debtors and Debtors in Possession*

Dated:  March 5, 2015

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Assured Pharmacy, Inc. (98-0233878); Assured Pharmacy Management, Inc. (27-1236523); Assured Pharmacy Dallas, Inc. (47-1936619); Assured Pharmacies, Inc. (20-0039751); Assured Pharmacy Boston, Inc. (46-1053319); Assured  Pharmacy Denver, Inc., (46-1067028); Assured Pharmacy Gresham, Inc. (20-5276969); Assured Pharmacy Kansas, Inc. (45-2800373); CS Compliance Group, Inc. (27-4603528); and Assured Pharmacies Northwest, Inc. (20-0500854).  The location of parent Debtor Assured Pharmacy, Inc.'s corporate office and the service address used for all Debtors is: 5600 Tennyson Parkway, Suite 390, Plano, Texas 75024.

**TABLE OF CONTENTS**

Page

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,
    AND GOVERNING LAW.............................................................................................3
    A.    Defined Terms .........................................................................................3
    B.    Rules of Interpretation ...........................................................................11
    C.    Computation of Time .............................................................................12
    D.    Governing Law ......................................................................................12
    E.    Reference to Monetary Figures ..............................................................12
    F.    Controlling Document ...........................................................................12

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS.......................12
    A.    Administrative Claims ...........................................................................12
    B.    Priority Tax Claims ...............................................................................13
    C.    Accrued Professional Compensation Claims ..........................................13
    D.    DIP Facility Claims ...............................................................................14
    E.    U.S. Trustee Statutory Fees ...................................................................14

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS............14
    A.    Summary of Classification .....................................................................15
    B.    Treatment of Claims and Interests .........................................................15
    C.    Special Provision Governing Unimpaired Claims ...................................20
    D.    Elimination of Vacant Classes ...............................................................20
    E.    Voting Classes; Presumed Acceptance by Non-Voting Classes ...............20
    F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .................20
    G.    Subordinated Claims .............................................................................20
    H.    Controversy Concerning Impairment .....................................................20

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ......................................21
    A.    Restructuring Transactions .....................................................................21
    B.    Sale Transaction ....................................................................................21
    C.    Sources of Plan Consideration and Distributions to Claim and Interest Holders ...........................21
    D.    Plan Administrator .................................................................................22
    E.    General Settlement of Claims .................................................................22
    F.    Section 1145 Exemption ........................................................................22
    G.    Release of Liens ....................................................................................22
    H.    Cancellation of Securities and Agreements .............................................23
    I.    Corporate Action ...................................................................................23
    J.    Effectuating Documents; Further Transactions ........................................24
    K.    Exemption from Certain Taxes and Fees .................................................24
    L.    Corporate Existence ..............................................................................24
    M.    Vesting of Assets ...................................................................................24
    N.    Assumption of Certain D&O Liability Insurance Policies ........................25
    O.    Release of Avoidance Actions ................................................................25
    P.    Retention of Retained Causes of Actions ................................................25

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......................25
    A.    Assumption of Executory Contracts and Unexpired Leases .....................25
    B.    Rejection of Executory Contracts and Unexpired Leases .........................25
    C.    Effect of Confirmation Order .................................................................26
    D.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ..................................26
    E.    Claims Based on Rejection of Executory Contracts and Unexpired Leases ..................................26
    F.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases ..........27

1

G.      Modifications, Amendments, Supplements, Restatements, or Other Agreements .........................27

H.      Reservation of Rights .........................27

I.      Nonoccurrence of Effective Date .........................28

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** .........................**28**

A.      Timing and Calculation of Amounts to Be Distributed .........................28

B.      Distributions on Account of Obligations of Multiple Debtors .........................28

C.      Distributions Generally .........................28

D.      Rights and Powers of Plan Administrator .........................29

E.      Distributions on Account of Claims Allowed After the Effective Date .........................29

F.      Delivery of Distributions and Undeliverable or Unclaimed Distributions .........................30

G.      Compliance with Tax Requirements/Allocations .........................30

H.      Claims Paid or Payable by Third Parties .........................31

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS** .........................**31**

A.      Resolution of Disputed Claims .........................31

B.      Disallowance of Claims .........................32

C.      Amendments to Claims .........................32

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** .........................**33**

A.      Discharge of Claims and Termination of Interests; Compromise and Settlement of Claims, Interests, and Controversies .........................33

B.      Subordinated Claims .........................33

C.      **Release by the Debtors** .........................33

D.      **Release by Holders of Claims and Interests** .........................34

E.      **Exculpation** .........................34

F.      **Injunction** .........................35

G.      **Purchaser Injunction** .........................35

H.      **Waiver of Statutory Limitations on Releases** .........................35

I.      Setoffs .........................36

**ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN** .........................**36**

A.      Conditions Precedent to the Effective Date .........................36

B.      Waiver of Conditions .........................37

C.      Substantial Consummation of the Plan .........................37

D.      Effect of Nonoccurrence of Conditions to the Effective Date .........................37

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** .........................**37**

A.      Modification and Amendments .........................37

B.      Effect of Confirmation on Modifications .........................37

C.      Revocation or Withdrawal of the Plan .........................38

**ARTICLE XI. RETENTION OF JURISDICTION** .........................**38**

**ARTICLE XII. MISCELLANEOUS PROVISIONS** .........................**40**

A.      Immediate Binding Effect .........................40

B.      Additional Documents .........................40

C.      Payment of Statutory Fees .........................40

D.      Dissolution of the Committee .........................40

E.      Reservation of Rights .........................40

F.      Successors and Assigns .........................41

G.      Service of Documents .........................41

H.      Term of Injunctions or Stays .........................42

I.      Entire Agreement .........................42

J.      Nonseverability of Plan Provisions .........................42

5816689.8

Assured Pharmacy, Inc., Assured Pharmacy Management, Inc., Assured Pharmacy Dallas, Inc., Assured Pharmacy Boston, Inc., Assured Pharmacy Denver, Inc., Assured Pharmacies, Inc., Assured Pharmacy Gresham, Inc., Assured Pharmacy Kansas, Inc., Assured Pharmacies Northwest, Inc.,  and CS Compliance Group, Inc.,as debtors and debtors in possession (each, a "<u>Debtor</u>" and, collectively, the "<u>Debtors</u>") respectfully propose this joint plan of reorganization for the resolution of the outstanding claims against and interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code.  Capitalized terms used and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof.  The Debtors intend to request that the Chapter 11 Cases be consolidated for procedural purposes only and jointly administered pursuant to an order of the Bankruptcy Court. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, businesses, results of operations, historical financial information, projections, and future operations, as well as a summary and analysis of the Plan and certain related matters, including the Sale Transaction and distributions to be made under the Plan. Each Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in the Plan, capitalized terms have the meanings set forth below.

1.    "<u>Accrued Professional Compensation Claims</u>" means all Claims for accrued fees and expenses (including transaction, success, or sale fees) for services rendered and expenses incurred by a Professional through and including the Effective Date, to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court and regardless of whether a monthly fee statement or interim fee application has been Filed for such fees and expenses.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Accrued Professional Compensation Claim.

2.    "<u>Administrative Claim</u>" means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code, including, without limitation:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors unless a claim for such costs and/or expenses is Disputed or has been time-barred or otherwise disallowed by the Plan or a Final Order; (b) Accrued Professional Compensation Claims (to the extent Allowed by the Bankruptcy Court); (c) all fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code, including but not limited to the U.S. Trustee Fees; (d) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code; (e) the DIP Facility Claim; and (f) the Transaction Termination Fee, to the extent triggered and due pursuant to the DIP Order, the DIP Note and Purchase Agreement.

3.    "<u>Administrative Claims Bar Date</u>" means the deadline for filing requests for payment of Administrative Claims (other than Accrued Professional Compensation Claims, DIP Facility Claims and the Transaction Termination Fee), which shall be the first Business Day that is 30 days following the Effective Date, subject to any exceptions specifically set forth in the Plan or a Final Order.

4.    "<u>Administrative Claims Objection Bar Date</u>" means the deadline for filing objections to requests for payment of Administrative Claims (other than requests for payment of Accrued Professional Compensation Claims), which shall be the first Business Day that is 180 days following the Effective Date; <u>provided</u>, that the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

5816689.8

5.  "<u>Affiliate</u>" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

6.  "<u>Allowed</u>" means with respect to Claims: (a) any Claim that is evidenced by a Proof of Claim which is or has been timely Filed by the applicable Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a Proof of Claim is not or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim allowed pursuant to the Plan, a Final Order of the Bankruptcy Court, or any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan; <u>provided</u>, that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed at any time prior to or after the Effective Date within the applicable period of time, if any, fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order.  Except as otherwise specified in the Plan or any Final Order, in no event shall the Allowed amount of any Claim exceed 100 percent of the principal amount of such Claim or otherwise include any amount for interest accruing after the Petition Date.  For purposes of determining the amount of any Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law.  Any Claim that (x) has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, or (y) is enjoined or released pursuant to the Plan, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or the Plan Administrator, as applicable.  For the avoidance of doubt, a Proof of Claim filed after the applicable Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim.  "Allow" and "Allowing" shall have correlative meanings.

7.  "<u>AR Revolver Agreement</u>" means that certain Revolving Line of Credit Loan Agreement, dated as of March, 2014, by and among Assured and Third Coast Bank SSB, as amended, restated, or otherwise modified from time to time, including pursuant to that first amendment to the AR Revolver Agreement, dated as of June 12, 2014, together with that certain BusinessManager Funding Agreement with Health Care Providers between Third Coast Bank, SSB and Assured dated as of June 12, 2014, as it may have been amended, restated, or otherwise modified from time to time.

8.  "<u>AR Revolver Agreement Claim</u>" means any Claim arising under or related to the AR Revolver Agreement.

9.  "<u>Assured</u>" means parent Debtor Assured Pharmacy, Inc.

10.  "<u>Avoidance Actions</u>" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547–553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

11.  "<u>Ballot</u>" means the form approved by the Bankruptcy Court and distributed to Holders of Impaired Claims entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan.

12.  "<u>Bankruptcy Code</u>" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as may be amended from time to time.

13.  "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Eastern District of Texas having jurisdiction over the Chapter 11 Cases.

14.  "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

5816689.8

15. "Business Day" means any day, other than a Saturday, Sunday, or any other date on which banks located in Dallas, Texas are closed for business as a result of federal, state, or local holiday.

16. "Cash" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

17. "Causes of Action" means any Claim, cause of action (including Avoidance Actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

18. "Chapter 11 Cases" means the jointly administered chapter 11 cases commenced by the Debtors in the Bankruptcy Court and styled In re Assured Pharmacy, Inc., et al., Case No. 15-40389 (Jointly Administered).

19. "Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

20. "Claims Bar Date" means the date by which a Proof of Claim must be or must have been Filed, as established by any Final Order of the Bankruptcy Court, as applicable.

21. "Claims Objection Bar Date" shall mean the later of:  (a) the first Business Day following 180 days after the Effective Date; and (b) such later date as may be fixed by the Bankruptcy Court, after notice and a hearing, upon a motion Filed before the day that is 180 days before the Effective Date.

22. "Claims Register" means the official register of Claims maintained by the Notice, Claims, and Solicitation Agent.

23. "Class" means a category of Holders of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

24. "Common Stock" means the common stock in Assured Pharmacy, Inc., and expressly excludes any Preferred Interests, options, warrants, rights, or other securities or agreements to acquire the common stock in Assured.

25. "Confirmation" means the entry of the Confirmation Order on the docket of the Bankruptcy Court in the Chapter 11 Cases.

26. "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on its docket in the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

27. "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

28. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to Purchaser.

29. "Consummation" means the occurrence of the Effective Date.

30. "Cure Cost" means all amounts (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any defaults under any Executory Contract or Unexpired Lease that is to be assumed and/or assumed and assigned by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code, which amounts shall be satisfied by the Plan Administrator from the Sale Proceeds.

31. "DIP Facility" means that certain debtor-in-possession financing facility of up to $1,500,000.00 entered into pursuant to the DIP Note, as approved by the DIP Order.

32. "DIP Facility Claim" means any Claim arising under or related to the DIP Facility.

33. "DIP Lender" means the lender from time to time party to the DIP Facility, solely in its capacity as such.

34. "DIP Note" means the *Senior Secured Super-Priority Debtor-in-Possession Promissory Note*, dated as of [_____], 2015, by and between the Debtors and Precise Analytical, LLC.

35. "DIP Order" means any interim or final order approving the DIP Note, including without limitation the *Final Order Authorizing Debtors to Use Cash Collateral, Obtain Debtor in Possession Financing, and Determining Adequate Protection, Superpriority Claims and Liens*, as entered by the Bankruptcy Court.

36. "Disclosure Statement" means the disclosure statement for this Plan, including all exhibits and schedules thereto and references therein that relate to the Plan, that is or has been (as the case may be) prepared, approved, and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law. The Disclosure Statement shall be in form and substance reasonably acceptable to the Purchaser.

37. "Disclosure Statement Order" means the order entered by the Bankruptcy Court approving the Disclosure Statement.

38. "Disputed" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.  For the avoidance of doubt, a Disputed Claim or Interest shall not include any Claim or Interest that has been disallowed under the Plan or by Final Order.

39. "Distribution Date" means the first Business Day that is at least 90 days after the Effective Date; provided, however, that for any Claim or Interest that has not been Allowed as of the Distribution Date, the Distribution Date for such Claim or Interest shall be 14 days after such Claim or Interest is Allowed by Final Order, or as otherwise agreed to in writing between the Plan Administrator and the Holder of such Claim or Interest.

40. "Distribution Record Date" means the date for determining which Holders of Allowed Claims are eligible to receive distributions hereunder, which shall be (a) the Effective Date or (b) such other date as designated in a Bankruptcy Court order.

41. "Effective Date" means the day, which shall be agreed to by the Debtors and the Purchaser, upon which all conditions precedent to the Effective Date set forth in the Plan or in the Securities Purchase Agreements have been satisfied or waived.

42. "Entity" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

43. "Estate" means, as to each Debtor, the estate created for the Debtor on the Petition Date pursuant to section 541 of the Bankruptcy Code.

44. "Exchange Act" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78oo, as now in effect and hereafter amended, the rules and regulations promulgated thereunder, and any similar federal, state, or local law.

45. "Exculpated Parties" means the Released Parties.

46. "Exculpation" means the exculpation set forth in Article VIII.E of the Plan.

47. "Executory Contract" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

48. "<u>Existing Interest</u>" means any Interest in a Debtor.

49. "<u>File</u>," "<u>Filed</u>," or "<u>Filing</u>" means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases or, with respect to the filing of a Proof of Claim or proof of Interest, on the Bankruptcy claims docket or with the Notice, Claims, and Solicitation Agent, as applicable.

50. "<u>Final Order</u>" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter which has not been reversed, stayed, modified, or amended, as to which the time to appeal, petition for certiorari or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari or motion for reargument, reconsideration, or rehearing has been timely filed, or as to which any appeal, petition for certiorari or motion for reargument, reconsideration or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, reargument, reconsideration, or rehearing was sought; <u>provided</u> that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

51. "<u>General Unsecured Claims</u>" means any Claim that is not Secured (including, for the avoidance of doubt, any unsecured debentures or notes) and is not:  (a) an Administrative Claim (including, for the avoidance of doubt, any Accrued Professional Compensation Claim or DIP Facility Claim); (b) a Priority Tax Claim; (c) an Other Priority Claim; (d) a Subordinated Claim; or (e) an Intercompany Claim.

52. "<u>General Unsecured Trade Claims</u>" means any General Unsecured Claim of trade creditors incurred in the ordinary course of the Debtors' business.

53. "<u>Governmental Unit</u>" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

54. "<u>Holder</u>" means any Entity holding a Claim or an Interest, as applicable.

55. "<u>HD Smith Secured Agreement</u>" means that certain secured loan agreement and promissory note, dated as of February 1, 2013, by and between Assured and H.D. Smith Wholesale Drug Co., as may have been amended, modified or extended from time to time prior to the Petition Date.

56. "<u>HD Smith Secured Cash Payment</u>" means Cash in an amount equal to $2,792,361.00, which shall be made by the Plan Administrator from the Plan Escrow.

57. "<u>HD Smith Secured Claim</u>" means any Claim related to or arising from the HD Smith Secured Agreement.

58. "<u>HD Smith Secured Claim Distribution</u>" means distribution of the HD Smith Secured Cash Payment to Holders of Allowed HD Smith Secured Claims in accordance with Article III.B.3 hereof.

59. "<u>Impaired</u>" means, with respect to a Claim, or a Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

60. "<u>Intercompany Claim</u>" means any Claim held by a Debtor against any Debtor, including, for the avoidance of doubt, all prepetition and postpetition Claims.

61. "<u>Intercompany Interests</u>" means any Interest held by a Debtor in a Debtor.

62. "<u>Interests</u>" means the common stock, preferred stock, limited liability company interests, partnership interests and any other equity, ownership, or profits interests in and of any Debtor and options, warrants, rights, or other securities or agreements to acquire the common stock, limited liability company interests, partnership interests or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement), including any Claim against the Debtors subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

7

63. "<u>Interim Compensation Order</u>" means any order entered by the Bankruptcy Court order approving the procedures for compensation for Professionals retained in these Chapter 11 Cases.

64. "<u>Judicial Code</u>" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

65. "<u>Lien</u>" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

66. "<u>New Governance Documents</u>" means such certificates, articles of formation, articles of incorporation, by-laws, or such other applicable formation documents of some or all of the Reorganized Debtors, which form shall be included in the Plan Supplement, and which shall be in form and substance acceptable to the Debtors and the Purchaser. Such New Governance Documents may include any documents necessary to change the Debtors' existing corporate structures into the organizational structures selected by the Purchaser after the Effective Date.

67. "<u>New Interests</u>" means the common stock, limited liability company interests, or other equity interests or economic interest, as the case may be, in Reorganized Assured to be issued on the Effective Date as provided herein.

68. "<u>Notice, Claims, and Solicitation Agent</u>" means any notice, claims, and solicitation agent for the Debtors appointed by order of the Court, if such an agent is appointed in this case.

69. "<u>Other General Unsecured Claim</u>" means any General Unsecured Claim against any of the Debtors to the extent such Claim has not already been paid during the Chapter 11 Cases, other than a General Unsecured Trade Claim.

70. "<u>Other Interests</u>" means any Interest in Assured other than the Preferred Interests.

71. "<u>Other Priority Claim</u>" means any Claim against any of the Debtors described in section 507(a) of the Bankruptcy Code to the extent such Claim has not already been paid during the Chapter 11 Cases, other than: (a) an Administrative Claim (including, for the avoidance of doubt, an Accrued Professional Compensation Claim or DIP Facility Claim); or (b) a Priority Tax Claim.

72. "<u>Other Secured Claim</u>" means any Secured Claim against any of the Debtors to the extent such Claim has not already been paid during the Chapter 11 Cases, other than: (a) an AR Revolver Agreement Claim; or (b) a HD Smith Secured Claim.

73. "<u>Person</u>" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

74. "<u>Petition Date</u>" means March 5, 2015, the date on which each Debtor commenced its respective Chapter 11 Case in the Bankruptcy Court.

75. "<u>Plan</u>" means this *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, as the same may be amended, supplemented, or modified from time to time with the consent of the Purchaser, including the Plan Supplement, which is incorporated herein by reference and made part of the Plan as if set forth herein.

76. "<u>Plan Administrator</u>" means a Person or Entity selected by Reorganized Assured, as designated in the Plan or a Plan Supplement.

77. "<u>Plan Escrow</u>" means the escrow account to established by the Reorganized Assured, administered by the Plan Administrator and into which the Sale Proceeds, less the amount to be deposited into the Professional Fee Escrow, shall be deposited and disbursed per the Plan.

78. "<u>Plan Supplement</u>" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed not later than ten days prior to the Voting Deadline, as amended, supplemented, or modified from time to time in accordance with the terms of the Plan, the Purchase Agreement, the Bankruptcy Code, and

the Bankruptcy Rules, including: (a) to the extent known, the identity of the members of the board of directors of Reorganized Assured and the nature and compensation for any member of the board of Reorganized Assured who is an "insider" under section 101(31) of the Bankruptcy Code; (b) the Schedule of Assumed Executory Contracts and Unexpired Leases; (c) the Schedule of Rejected Executory Contracts and Unexpired Leases; (d) the applicable New Governance Documents; (e) a non-exhaustive schedule identifying known Retained Causes of Action; and (f) the identity of the Plan Administrator and, if applicable, the Plan Administrator's agreement to be bound by the terms of this Plan. Except as specifically provided otherwise in the Plan, each document, schedule, and exhibit included in the Plan Supplement shall be reasonably acceptable to the Debtors and the Purchaser.

79. "Preferred Stock" means an Interest in Assured Pharmacy, Inc. that receives liquidation preference rights and other rights in preference to Common Stock and which is classified into one of the four sub-classes (A, B, C or D).

80. "Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

81. "Pro Rata Share" means the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion to the aggregate amount that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

82. "Professional" means an Entity: (a) retained in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

83. "Professional Fee Escrow" means an interest-bearing account, which shall be funded exclusively from the Sale Proceeds, to hold and maintain an amount of Cash equal to all Accrued Professional Compensation Claims; provided, that the Professional Fee Escrow shall be increased to the extent fee applications are filed after the Effective Date in the amount thereof.

84. "Proof of Claim" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

85. "Purchase Agreement" means that certain Equity Purchase Agreement, dated as of **March 5**, 2015, between the Purchaser and Assured, together with all exhibits, schedules, and attachments thereto, in the form attached hereto as **Exhibit 1**, as the same may be amended, modified, or supplemented from time to time.

86. "Purchaser" means Precise Analytical, LLC.

87. "Reinstated" means: (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the Holder of such Claim or Interest so as to leave such Claim or Interest not Impaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim or Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensating the Holder of such Claim or Interest (other than the Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim or Interest entitles the Holder.

88. "Released Party" means, collectively, in each case solely in their capacity as such:  (a) Purchaser; (b) each Debtor and Reorganized Debtor; (c) the Plan Administrator; (d) the DIP Lenders; and (e) with respect to the foregoing entities in clauses (a) through (d), solely in their capacity as such, their respective current and former affiliates, subsidiaries, officers, directors, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

89. "Releasing Parties" means, collectively:  (a) the Released Parties; (b) all Holders of Claims or Interests who do not opt out of the Plan's release provisions with respect to the Released Parties pursuant to an election contained on the relevant Ballot; and (c) all Holders of Claims or Interests who are deemed to accept the Plan.

90. "Reorganized Assured" means reorganized Assured Pharmacy, Inc., as reorganized pursuant to and under the Plan, and any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

91. "Reorganized Debtors" means each of the Debtors, as reorganized pursuant to and under the Plan, and any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, including Reorganized Assured.

92. "Restructuring Transactions" means one or more transactions pursuant to section 1123(a)(5)(D) of the Bankruptcy Code to occur on or before the Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Purchase Agreement including (a) the execution and delivery of appropriate agreements or other documents of merger, sale, consolidation, equity issuance, certificates of incorporation, operating agreements, bylaws, or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of sale, equity issuance, transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; and (c) if implemented pursuant to the Plan, all transactions necessary to provide for the purchase of substantially all of the assets or Interests of any of the Debtors, which purchase may be structured as a taxable transaction for United States federal income tax purposes; and (d) all other actions that the Debtors determine are necessary or appropriate.

93. "Retained Causes of Action" means all Causes of Action.

94. "Sale Proceeds" means the Cash proceeds of the Sale Transaction payable into the Plan Escrow by Purchaser upon the closing under the Purchase Agreement and Plan.

95. "Sale Transaction" means that certain transaction between Assured and Purchaser as set forth in the Purchase Agreement.

96. "Schedule of Assumed Executory Contracts and Unexpired Leases" means the schedule of certain Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan in the form filed as part of the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

97. "Schedule of Rejected Executory Contracts and Unexpired Leases" means the schedule of certain Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan in the form filed as part of the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

98. "Schedules" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

99. "Secured" means when referring to a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the

extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

100. "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, or any similar federal, state, or local law.

101. "Series A&C Preferred Cash Distribution" means Cash in an amount equal to $582,310.00, which shall be made by the Plan Administrator from the Plan Escrow.

102. "Series D Preferred Cash Distribution" means Cash in an amount equal to $2,183,836.00, which shall be made by the Plan Administrator from the Plan Escrow.

103. "Subordinated Claim" means any Claim that is subject to contractual, legal, and/or equitable subordination, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.

104. "Taxing Authority" means any governmental authority exercising any authority to impose, regulate, levy, assess, or administer the imposition of any tax.

105. "Transaction Termination Fee" shall have the meaning ascribed to it in the DIP Note or the DIP Order.

106. "Unexpired Lease" means an unexpired lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

107. "Unimpaired" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

108. "U.S. Trustee" means the United States Trustee for the Eastern District of Texas.

109. "U.S. Trustee Fees" means fees arising under section 1930(a)(6) of the Judicial Code and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

110. "Voting Deadline" means 4:00 p.m., prevailing Central Time, on [▪].

111. "Voting Record Date" means 10:00 a.m., prevailing Central Time, on [▪].

112. "Voting Report" means the voting report to be filed by the Notice, Claims, and Solicitation Agent or the Debtors, as applicable, prior to the Confirmation Hearing.

B.    *Rules of Interpretation*

For purposes herein:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) except as otherwise provided, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the terms of the Plan; (4) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan or hereto; (5) unless otherwise stated, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the

11

words "without limitation;" (8) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (9) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (10) any docket number references in the Plan shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Cases; (11) any effectuating provisions may be interpreted by the Purchaser and Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; (12) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (13) any reference to an Entity as a Holder of a Claim includes that Entity's successors or assigns; and (14) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable.

C.      Computation of Time

        The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.      Governing Law

        Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided that corporate or limited liability company governance matters shall be governed by the laws of the state of incorporation or formation, of the applicable Entity.  To the extent a rule of law or procedure is supplied by federal bankruptcy law, the Bankruptcy Code, the Bankruptcy Rules, and the decisions and standards of the United States Supreme Court, the United States Court of Appeals for the Fifth Circuit, the United States District Court for the Eastern District of Texas, and the Bankruptcy Court, as applicable, shall govern and control.

E.      Reference to Monetary Figures

        All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      Controlling Document

        In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan Supplement shall control unless stated otherwise in such Plan Supplement document.  In the event of any inconsistency between this Plan and the Purchase Agreement, the relevant provision of the Purchase Agreement shall control in all respects.


## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

A.      Administrative Claims

        Unless otherwise agreed to by the Holder of an Allowed Administrative Claim, each Holder of an Allowed Administrative Claim will receive in exchange for full and final satisfaction, compromise, settlement, release, and discharge of its Administrative Claim, payment of an amount of Cash equal to the amount of such Allowed Administrative Claim (1) on the Effective Date, (2) if the Administrative Claim is not Allowed as of the Effective

Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter, (3) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims and without any further notice to or action, order, or approval of the Bankruptcy Court, or (4) for any amounts owed pursuant to the Purchase Agreement, in accordance with the Purchase Agreement.

Unless previously Filed, requests for payment of Administrative Claims (excluding Accrued Professional Compensation Claims and the Transaction Termination Fee) must be Filed and served on the Debtors no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims by the Administrative Bar Date that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Plan Administrator, the Reorganized Debtors, the Purchaser, or their respective property and such Administrative Claims shall be deemed discharged as of the Effective Date. For the avoidance of doubt, the payment of the Transaction Termination Fee shall be governed by the DIP Order and DIP Note, as applicable.

B.      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

C.      *Accrued Professional Compensation Claims*

1.      Professional Fee Escrow

As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, Reorganized Assured shall establish the Professional Fee Escrow to be controlled and administered by the Plan Administrator. The Debtors shall fund the Professional Fee Escrow with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow shall be funded no later than the Effective Date and maintained in trust for the Professionals and shall not be considered property of the Reorganized Debtors or the Debtors' Estates; provided, however, that the Reorganized Debtors shall have a reversionary interest in the excess, if any, of the amount of the Professional Fee Escrow over the aggregate Allowed Accrued Professional Compensation Claims to be paid from the Professional Fee Escrow.

2.      Final Fee Applications and Payment of Accrued Professional Compensation Claims

All final requests for payment of Accrued Professional Compensation Claims incurred during the period from the Petition Date through the Confirmation Date, shall be Filed no later than 60 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior Bankruptcy Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court. The amount of Accrued Professional Compensation Claims owing to the Professionals shall be paid in Cash by the Plan Administrator to such Professionals from funds held in the Professional Fee Escrow when and to the extent such Claims are Allowed by a Final Order. To the extent that funds held in the Professional Fee Escrow are unable to satisfy the amount of Accrued Professional Compensation Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A of the Plan. After all Accrued Professional Compensation Claims have been paid in full, the Final Order allowing such Accrued Professional Compensation Claims shall direct the Plan Administrator to return any excess amounts to the Reorganized Debtors.

13

        3.      <u>Estimation of Fees and Expenses</u>

To receive payment for unbilled fees and expenses incurred through the Effective Date, the Professionals shall make a good-faith estimate of their Accrued Professional Compensation Claims through the Effective Date and shall deliver such estimate to the Debtors no later than ten days prior to the Effective Date; <u>provided</u>, <u>however</u>, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional. The total amount so estimated shall be utilized by the Debtors to determine the Professional Fee Escrow Amount.

        4.      <u>Post-Confirmation Fees and Expenses</u>

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses incurred by the Debtors or the Committee (if any). Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, in consultation with the Purchaser, may employ and pay any Professional or Ordinary Course Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

D.     *DIP Facility Claims*

As of the Effective Date, any and all outstanding DIP Facility Claims will be credited against the Purchase Price (as defined in the Purchase Agreement, and with all applicable credits and calculations required under Section 2.2 of the Purchase Agreement) such that the DIP Facility Claims shall be deemed satisfied in full, and the Holders thereof shall be deemed to have released (by such credit applied against the Purchase Price) any such DIP Facility Claims, in each instance in accordance with the terms of the Purchase Agreement. Notwithstanding the foregoing, for avoidance of doubt, in no instance shall the Transaction Termination Fee be considered part of the DIP Facility Claim, nor shall anything in this Plan release the Debtors' obligations to pay the Transaction Termination Fee pursuant to the terms of Article II.A of this Plan, or the DIP Order, if applicable.

E.     *U.S. Trustee Statutory Fees*

Each Debtor shall pay all of its respective U.S. Trustee Fees for each quarter (including any fraction thereof) until such Debtor's Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, Accrued Professional Compensation Claims, and DIP Facility Claims have not been classified and are thus excluded from the Classes of Claims and Interests set forth in this Article III. All Claims and Interests, other than Administrative Claims, Priority Tax Claims, Accrued Professional Compensation Claims, and DIP Facility Claims are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

A.     *Summary of Classification*

      The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as set forth below.  The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  All of the potential Classes for all of the Debtors are set forth herein.  Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims shall be treated as set forth in Article III.D hereof.  For all purposes under the Plan, each Class will contain sub-Classes for each of the Debtors (*i.e.*, there will be thirteen (13) Classes for each Debtor).

| Class | Claims and Interests | Status | Voting Rights |
|:-----:|:---------------------|:------:|:-------------:|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | AR Revolver Agreement Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | HD Smith Secured Claim | Impaired | Entitled to Vote |
| 4 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 5 | General Unsecured Trade Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 6 | Other General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 7 | Preferred Stock – Series D | Impaired | Entitled to Vote |
| 8 | Preferred Stock – Series A & C | Impaired | Entitled to Vote |
| 9 | Preferred Stock – Series B | Impaired | Entitled to Vote |
| 10 | Intercompany Claims | Impaired | Entitled to Vote |
| 11 | Interests in the Subsidiary Debtors | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 12 | Subordinated Claims | Impaired | Entitled to Vote |
| 13 | Other Interests in Assured | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.     *Treatment of Claims and Interests*

    1.     Class 1—Other Priority Claims

        (a)     *Classification*:  Class 1 consists of all Other Priority Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Other Priority Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder thereof shall receive, at the option of the Plan Administrator, either:

      (i)     payment in full in cash of such Holder's Allowed Other Priority Claim; or

      (ii)     such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

(c)     *Voting*:  Class 1 is Unimpaired.  Holders of Claims in Class 1 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

2.     Class 2—AR Revolver Agreement Claims

(a)     *Classification*:  Class 2 consists of all AR Revolver Agreement Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed AR Revolver Agreement Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed AR Revolver Agreement Claim, each such Holder thereof shall receive, at the option of the Plan Administrator, either:

      (i)     payment in full in Cash of such Holder's Allowed AR Revolver Agreement Claim; or

      (ii)     such other treatment rendering such Holder's Allowed AR Revolver Agreement Claim Unimpaired.

(c)     *Voting*:  Class 2 is Unimpaired.  Holders of Claims in Class 2 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

(d)     *Unsecured Portion:*  If any portion of a Holder's AR Revolver Agreement Claim is held to be unsecured pursuant to section 506(a) of the Bankruptcy Code, then such portion of such Holder's Claim shall be treated as a General Unsecured Claim under Class 6, in Article III.B.6 below.

3.     Class 3—HD Smith Secured Claim

(a)     *Classification*:  Class 3 consists of all HD Smith Secured Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed HD Smith Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed HD Smith Secured Claim, each such Holder thereof shall receive its Pro Rata Share of the HD Smith Secured Claim Distribution, without duplication.

(c)     *Voting*:  Class 3 is Impaired.  Holders of Claims in Class 3 as of the Voting Record Date are entitled to vote to accept or reject the Plan.

16

4.      <u>Class 4—Other Secured Claims</u>

(a)      *Classification*:  Class 4 consists of all Other Secured Claims (i.e., Secured Claims other than the AR Revolver Agreement Claim and the HD Smith Secured Claim).

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment of its Allowed Other Secured Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each such Holder thereof shall receive, at the option of the Plan Administrator, either:

(i)      Payment in full in Cash of such Holder's Allowed Other Secured Claim;

(ii)      Reinstatement of such Holder's Allowed Other Secured Claim; or

(iii)      such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

(c)      *Voting*:  Class 4 is Unimpaired.  Holders of Claims in Class 4 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

5.      <u>Class 5—General Unsecured Trade Claims</u>

(a)      *Classification*:  Class 5 consists of all General Unsecured Trade Claims.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Trade Claim agrees to a less favorable treatment of its Allowed General Unsecured Trade Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Trade Claim, each such Holder thereof shall receive:

(i)      For Claims arising (based on the original invoice dates) more than 90 days before the Petition Date, payment in full in Cash of such Holder's Allowed General Unsecured Trade Claim, or such other treatment rendering such Holder's Allowed General Unsecured Trade Claim Unimpaired; and

(ii)      For Claims arising (based on the original invoice dates) 90 days or less before the Petition Date, payment in full in Cash of such Holder's Allowed General Unsecured Trade Claim by Reorganized Assured on the Effective Date or as soon as reasonably practicable thereafter, or such other treatment rendering such Holder's Allowed General Unsecured Trade Claim Unimpaired.  For the avoidance of doubt, payments under this provision shall not be made from the Plan Escrow.

(c)      *Voting*:  Class 5 is Unimpaired.  Holders of Claims in Class 5 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

6.      <u>Class 6—Other General Unsecured Claims</u>

(a)      *Classification:*  Class 6 consists of Other General Unsecured Claims.

(b)     *Treatment:* Except to the extent that a Holder of an Allowed Other General Unsecured Claim agrees to a less favorable treatment of its Allowed Other General Unsecured Claim, each such Holder thereof shall receive payment in full in Cash.

(c)     *Voting*: Class 6 is Unimpaired. Holders of Claims in Class 6 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

7.     Class 7—Preferred Stock, Series D:

(a)     *Classification:* Class 7 consists of Holders of shares of Series D Preferred Stock.

(b)     *Treatment:* Except to the extent that a Holder of a Class 7 Claim agrees to a less favorable treatment of its Allowed Class 7 Claim, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Class 7 Claim, each such Holder thereof shall receive a Pro Rata Share of the Series D Preferred Cash Distribution, *plus* a Pro Rata Share of the Remaining Proceeds (as defined in Article III.B.9(b) below), if any. To the extent a Holder of an Allowed Class 7 Claim has agreed to receive less than its Pro Rata Share of the Series D Preferred Cash Distribution or Remaining Proceeds (as applicable), any excess of the Series D Preferred Cash Distribution and Remaining Proceeds shall be distributed pro rata among the remaining Holders of Allowed Class 7 Claims who have not agreed to receive less than their respective Pro Rata Share of such funds. All such Holder's shares of Series D Preferred Stock shall be cancelled.

(c)     *Voting:* Class 7 is Impaired. Holders of Claims in Class 7 as of the Voting Record Date are entitled to vote to accept or reject the Plan.

8.     Class 8—Preferred Stock Claim, Series A & C:

(a)     *Classification:* Class 8 consists of Holders of shares of Series A & C Preferred Stock.

(b)     *Treatment:* Except to the extent that a Holder of a Class 8 Claim agrees to a less favorable treatment of its Allowed Class 8 Claim, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Class 8 Claim, each such Holder thereof shall receive a Pro Rata Share of the Series A&C Preferred Cash Distribution. To the extent a Holder of an Allowed Class 8 Claim has agreed to receive less than its Pro Rata Share of the Series A&C Preferred Cash Distribution, any excess of the Series A&C Preferred Cash Distribution shall be distributed pro rata among the remaining Holders of Allowed Class 8 Claims who have not agreed to receive less than their respective Pro Rata Share of such funds. All such Holder's shares of Series A and Series C Preferred Stock, as applicable, shall be cancelled.

(c)     *Voting:* Class 8 is Impaired. Holders of Claims in Class 8 as of the Voting Record Date are entitled to vote to accept or reject the Plan.

9.     Class 9—Preferred Stock Claim, Series B:

(a)     *Classification:* Class 9 consists of Holders of shares of Series B Preferred Stock.

(b)     *Treatment:* Except to the extent that a Holder of a Class 9 Claim agrees to a less favorable treatment of its Allowed Class 9 Claim, and subject to Article III.B.9(c) below, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Class 9 Claim, each such Holder thereof shall receive a Pro Rata Share of any Sale Proceeds remaining after (i) payment of Claims and Interests in Class 1 through

18

Class 8, except for individual Claims or Interests which are subordinated to Class 9 Series B Preferred Stock Claim, if any, and (ii) payment of reasonable and necessary costs (including reasonable compensation allowed hereunder) incurred by the Plan Administrator in fulfilling its obligations under this Plan.  All such Holder's shares of Series B Preferred Stock shall be cancelled.

(c)     *Remaining Proceeds:*  Notwithstanding the foregoing, distributions under Article III.B.9(b) shall not exceed $.23 per share of Series B Preferred Stock, as fully diluted Common Stock (the "Maximum Series B Distribution").  In the event that the Sale Proceeds are sufficient to make the Maximum Series B Distribution to Holders of Class 9 Series B Preferred Stock Claims, and there remain excess Sale Proceeds (the "Remaining Proceeds"), the Plan Administrator shall distribute such Remaining Proceeds to Holders of Class 7 Series D Preferred Stock Claims in accordance with Article III.B.7(b) above.

(d)     *Voting:*  Class 9 is Impaired.  Holders of Claims in Class 9 as of the Voting Record Date are entitled to vote to accept or reject the Plan.

10.     Class 10—Intercompany Claims

(a)     *Classification*:  Class 10 consists of all Intercompany Claims.

(b)     *Treatment*:  Intercompany Claims shall be, at the option of the Reorganized Debtors, either:

(i)      Reinstated as of the Effective Date; or

(ii)     cancelled without any distribution on account of such Claims.

(c)     *Voting*:  Class 10 is Impaired under the Plan.  Holders of Claims in Class 10 as of the Voting Record Date are entitled to vote to accept or reject the Plan.

11.     Class 11—Other Intercompany Interests

(a)     *Classification:*  Class 11 consists of all Intercompany Interests, including warrants, not otherwise classified herein.

(b)     *Treatment*:  Intercompany Interests shall be cancelled and not receive any distribution.  Notwithstanding the foregoing, the Reorganized Assured shall have the option to maintain the equity ownership of any Debtor by any other Debtor.

(c)     *Voting*:  Class 11 is Impaired under the Plan.  Holders of Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

12.     Class 12—Subordinated Claims

(a)     *Classification*:  Class 12 consists of all Subordinated Claims.

(b)     *Treatment*:  Unless the Holder of an Allowed Class 12 Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Class 12 Claim, each such Holder thereof shall receive a Pro Rata Share of any Sale Proceeds remaining after payment of all Allowed Claims to which the Allowed Class 12 Claim has been subordinated.

19

(c)    *Voting*:  Class 12 is Impaired.  Holders of Claims in Class 12 as of the Voting Record Date are entitled to vote to accept or reject the Plan.

13.    <u>Class 13—Other Interests in Assured</u>

(a)    *Classification:*  Class 13 consists of all Other Interests (*i.e.,* other than Preferred Interests).

(b)    *Treatment*:  All shares of Other Interests classified in this Class 13 will be discharged, cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and no distributions will be made on account of such Other Interests.

(c)    *Voting:*  Class 13 Other Interests are Impaired under the Plan.  Holders of Class 13 Other Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or Plan Administrator, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.  Unless otherwise Allowed, Unimpaired Claims shall remain Disputed Claims under the Plan.

D.    *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.    *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

F.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

The Debtors reserve the right to seek Confirmation for the applicable Debtors pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

G.    *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

H.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

5816689.8

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Restructuring Transactions*

On or before the Effective Date or as soon as reasonably practicable thereafter, the Plan Administrator is authorized, without further order of the Bankruptcy Court, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan and the Purchase Agreement, including, without limitation: (1) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; (4) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (5) the consummation of the transactions contemplated by the Purchase Agreement; and (6) the issuance of the New Interests and the execution of all documents related thereto.

B.      *Sale Transaction*

On the Effective Date, the Debtors and the Purchaser shall be authorized to consummate the Sale Transaction pursuant to the terms of the Purchase Agreement and Confirmation Order.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Retained Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; provided that any Claims against the Debtors as of the Effective Date shall be settled, compromised, withdrawn, or litigated to judgment as set forth in Article VII of the Plan.

C.      *Sources of Plan Consideration and Distributions to Claim and Interest Holders*

Unless otherwise provided in the Plan or the Purchase Agreement, the Plan Administrator from the Plan Escrow shall use the Sale Proceeds: (1) to make Cash distributions required by the Plan, (2) to pay any amounts required by the Purchase Agreement or DIP Order not previously paid, including Cure Costs, payments under employee incentive agreements, and the Transaction Termination Fee (if applicable), (3) to pay other expenses of the Chapter 11 Cases, to the extent so ordered by the Bankruptcy Court, and (4) for general costs incurred in discharging any obligation under the Plan.  From the Professional Fee Escrow, the Plan Administrator shall pay the Allowed Professional Fee Claims.

For the avoidance of doubt, all distributions on account of any Allowed Claim or Interest under this Plan shall be satisfied solely from the Plan Escrow, except as expressly provided for in Article III.B.5(b)(ii) above, and the Reorganized Debtors shall have no liability or obligation to any Holder of a Claim under this Plan except as expressly provided for in Article III.B.5(b)(ii) of this Plan.  Unless otherwise agreed or provided in this Plan, distributions required by this Plan on account of Allowed Claims or Interests shall be the sole responsibility of the Plan Administrator.

1.      Payment of Sale Proceeds by the Purchaser; Contribution of Sale Proceeds by Assured

On the Effective Date, the Purchaser shall pay to Assured the Sale Proceeds as and to the extent provided for in the Purchase Agreement, and Assured shall contribute the Sale Proceeds to the Plan Escrow and the Professional Fee Escrow in accordance with the Plan. The Plan Escrow shall be held in the name of Assured's post Effective Date Estate or as otherwise instructed by the Bankruptcy Court.

2.      <u>Issuance and Distribution of New Interests</u>

The issuance of the New Interests by Reorganized Assured to the Purchaser, and in the case of any subsidiary Reorganized Debtor the issuance of new Interests per the direction of the Purchaser, on the Effective Date pursuant to the terms of the Purchase Agreement is authorized without the need for any further corporate action or without any further action by the Reorganized Debtors or Reorganized Assured, as applicable.  Pursuant to the Plan, the issuance and distribution by Reorganized Assured on or after the Effective Date of shares of New Interests to the Purchaser in consideration for the Sale Proceeds (to the extent practicable, directly, or else through a Distribution Agent) to satisfy the Debtors' obligations under the Purchase Agreement is hereby authorized.  All of the shares of New Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. On the Effective Date, each of Reorganized Assured and the other Reorganized Debtors shall be a private company. As such, the Reorganized Debtors will not list the New Interests on a national securities exchange as of the Effective Date.

The offering, issuance, and distribution of the New Interests shall be exempt from the registration and prospectus delivery requirements of the Securities Act and any other applicable state and federal law requiring registration and/or delivery of a prospectus prior to the offering, issuance, distribution, or sale of securities pursuant to section 1145 of the Bankruptcy Code, consistent with Article IV.F of the Plan.

3.      <u>Payment of Cure Costs</u>

On the Effective Date or as soon as reasonably practicable thereafter, the Plan Administrator shall pay all Cure Costs from the Plan Escrow.  For the avoidance of doubt, Cure Costs shall be satisfied exclusively from the Plan Escrow pursuant to section 365 of the Bankruptcy Code and in accordance with the Purchase Agreement. Neither the Reorganized Debtors nor the Purchaser shall have any obligation to make any payment or other distribution on account of any Cure Costs.

D.      *Plan Administrator*

On and after the Effective Date, unless specifically set forth to the contrary in the Plan, the Plan Administrator shall have the authority and right, without the need for Bankruptcy Court approval, to carry out and implement all provisions of the Plan, including liquidating, settling, compromising, or resolving all Claims, any and all contracts, and any other obligations of, or associated with, the Debtors.  The Plan Administrator shall make distributions from the Plan Escrow to Holder of Claims as authorized in the Plan in as timely a manner as possible.

E.      *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies resolved pursuant to the Plan.

F.      *Section 1145 Exemption*

The offering, issuance, and distribution of the New Interests shall be exempt from the registration and prospectus delivery requirements of the Securities Act and any other applicable state and federal law requiring registration and/or delivery of a prospectus prior to the offering, issuance, distribution, or sale of securities pursuant to section 1145 of the Bankruptcy Code, consistent with this Article IV.F of the Plan.

G.      *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction, compromise, settlement, release, and discharge in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of

22

trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, discharged, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledge, or other security interests against any property of the Estates, except the Plan Escrow and the Professional Fee Escrow, shall revert to the Reorganized Debtors, as applicable, and their respective successors and assigns.  The Reorganized Debtors, as applicable, are authorized without further order of the Bankruptcy Court to file any necessary or desirable documents to evidence such release in the name of such Secured Party.

H.    *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of the Reorganized Debtors under any other certificate, share, note, bond, indenture, debenture, purchase right, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or profits interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest, shall be canceled as to the Debtors or otherwise treated as set forth in the Plan, and the Reorganized Debtors, as applicable, shall not have any continuing obligations thereunder; and (2) the obligations of the Reorganized Debtors, as applicable, pursuant, relating, or pertaining to any agreements, indentures, debentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Reorganized Debtors, as applicable, shall be fully released, settled, and compromised except as expressly provided herein; *provided* that, notwithstanding Confirmation or the occurrence of the Effective Date, any such agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of allowing such Holders to receive distributions under the Plan from the Plan Escrow or the Reorganized Debtors, as applicable, as provided herein.

On the Effective Date, except to the extent otherwise provided herein, any indenture or debenture relating to any of the foregoing, shall be deemed to be canceled and terminated, as permitted by section 1123(a)(5)(F) of the Bankruptcy Code without further action under any applicable agreement, law, regulation, order, or statute, and the obligations of the Debtors thereunder shall be fully released, settled, discharged, and compromised.

I.    *Corporate Action*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Plan Administrator, the Reorganized Debtors, or any other Entity or Person, as applicable, including:  (1) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan (including, for the avoidance of doubt, the distribution of the Sale Proceeds pursuant to the Plan), and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; (4) selection of the board of directors of Reorganized Assured; (5) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (6) the consummation of the transactions contemplated by the Purchase Agreement; (7) the issuance of the New Interests and the execution of all documents related thereto; (8) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law; and (9) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.  All matters provided for in the Plan involving the company structure of the Debtors, and any company action required by the Debtors in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtors.  The authorizations and approvals contemplated by this Article IV.I of the Plan shall be effective notwithstanding any requirements under nonbankruptcy law.

23

J.      *Effectuating Documents; Further Transactions*

The Reorganized Debtors, managers, officers, authorized persons, and members of the boards of managers and directors thereof, and the Plan Administrator are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, including the New Interests and the New Governance Documents and any other documents that may be necessary to convert each of the Debtors to a limited liability company on the Effective Date or as reasonably practicable thereafter, in the name of and on behalf of the Reorganized Debtors, as applicable, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.  On and after the Effective Date, the New Governance Documents shall be deemed to be valid, binding and enforceable in accordance with their terms, and each holder of New Interests  shall be deemed to be bound thereby, in each case without the need for execution by any party other than an authorized representative for the Reorganized Debtors.

K.      *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto or pursuant to the issuance of the New Interests shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, FERC filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Such exemption specifically applies to (1) the creation of any mortgage, deed of trust, Lien, or other security interest; (2) the making or assignment of any lease or sublease; (3) any Restructuring Transaction; (4) the issuance, distribution, and/or sale of any of the New Interests and any other securities of the Reorganized Debtors; or (5) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including:  (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any Restructuring Transaction occurring under the Plan.

L.      *Corporate Existence*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval; provided, however, that the Purchaser may elect to have a new holding company formed pursuant to the Purchase Agreement.  Separate from the corporate existence of the Reorganized Debtors, the Debtors' Estates shall continue to the extent necessary for the Plan Administrator to discharge its obligations under the Plan.

M.      *Vesting of Assets*

Except as otherwise provided in the Plan, any Exhibits hereto, or any Plan Supplement incorporated herein, on the Effective Date, all applicable Causes of Action and all property in the Debtors' Estates other than the Sale Proceeds deposited into the Plan Escrow and the Professional Fee Escrow shall be preserved and shall vest in the Reorganized Debtors, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their businesses and use, acquire, or dispose of property and, as applicable, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Except as provided to the contrary in the Plan or the Purchase Agreement, all obligations under the Plan, including any obligation to make distributions under the Plan, shall be satisfied by the Plan Administrator exclusively from the Plan Escrow and the Professional Fee Escrow.  Both such escrow accounts shall

5816689.8

be established by Reorganized Assured, but shall not constitute the property of the Reorganized Assured, except for any reversionary interest provided for in this Plan.

N.      *Assumption of Certain D&O Liability Insurance Policies*

To the extent that the D&O Liability Insurance Policies are considered to be Executory Contracts, notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtors, as their interest may appear, shall be deemed to have assumed all unexpired D&O Liability Insurance Policies with respect to the Debtors' directors, managers, officers, and employees serving as of the Petition Date pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of this assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be filed.

O.      *Release of Avoidance Actions*

In accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall release all rights to commence and pursue, as appropriate, any and all Avoidance Actions not identified as a Retained Cause of Action in the Plan Supplement.

P.      *Retention of Retained Causes of Actions*

On the Effective Date, the Reorganized Debtors will be vested with title to the Retained Causes of Action, regardless of whether scheduled by the Debtors, including, without limitation, all such Causes of Action of any kind whatsoever at law or equity, free and clear of all liens, claims, encumbrances, charges, and other interests of creditors and equity security holders, in accordance with section 1141 of the Bankruptcy Code.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption of Executory Contracts and Unexpired Leases*

Except as otherwise provided herein, as of the Effective Date, all Executory Contracts and Unexpired Leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases will be deemed: (i) assumed by the applicable Reorganized Debtor in accordance with, and subject to the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code; and (ii) if so indicated on the Schedule of Assumed Executory Contracts and Unexpired Leases, assigned to the other party identified as the assignee for each assumed Executory Contract and Unexpired Lease. For the avoidance of doubt, the Purchase Agreement shall remain in the Estates and will be administered post Effective Date by the Plan Administrator.

B.      *Rejection of Executory Contracts and Unexpired Leases*

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement, or in any document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have rejected each Executory Contract and Unexpired Lease to which it is a party, unless such Executory Contract or Unexpired Lease: (1) was previously assumed or rejected; (2) was previously expired or terminated pursuant to its own terms; (3) is the subject of a motion or notice to assume filed on or before the Confirmation Date; or (4) is designated specifically or by category as an Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases. For the avoidance of doubt, any Executory Contract or Unexpired Lease which does not appear on the Schedule of Rejected Executory Contracts and Unexpired Leases and which is not subject to one of the four conditions for assumption of Executory Contracts and Unexpired Leases listed in this paragraph shall be deemed rejected.

25

C.      *Effect of Confirmation Order*

The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions and assignments or rejections described above as of the Effective Date.  Unless otherwise indicated, all assumptions and assignments or rejections of Executory Contracts and Unexpired Leases in the Plan will be effective as of the Effective Date.  Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or Bankruptcy Court Order shall vest in and be fully enforceable by the applicable Debtor, including such Debtor as reorganized pursuant to and under the Plan.  Each Executory Contract and Unexpired Lease assumed and assigned pursuant to the Plan or by Bankruptcy Court order, shall vest in and be fully enforceable by the applicable assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court.  To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Notwithstanding the foregoing paragraph or anything contrary herein, subject to the terms and conditions of the Purchase Agreement, the Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases until 15 days after the Effective Date.

D.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any defaults under each Executory Contract and Unexpired Lease to be assumed by any Debtor pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, solely by payment of the Cure Cost by the Plan Administrator exclusively from the Plan Escrow except as otherwise agreed by the non-Debtor party to any such Executory Contract or Unexpired Lease on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the Reorganized Debtors, and the counterparties to each such Executory Contract or Unexpired Lease may otherwise agree.

In the event of a dispute regarding:  (1) the amount of any Cure Cost, (2) the ability of the Reorganized Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" within the meaning of section 365(b) of the Bankruptcy Code, if applicable, under the Executory Contract or the Unexpired Lease to be assumed or assumed and assigned, and/or (3) any other matter pertaining to assumption and/or assignment, then such Cure Costs shall be paid following the entry of a Final Order resolving the dispute and approving the assumption and assignment of such Executory Contracts or Unexpired Leases or as may be agreed upon by the Reorganized Debtors, as applicable, and the non-Debtor counterparty; provided that, prior to the Effective Date or such other date as determined by the Bankruptcy Court (such date to be in no event earlier than the date of the entry of the Confirmation Order), the Debtors, with the written consent of the Purchaser, may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court; provided, further, that notwithstanding anything to the contrary herein, prior to or upon the entry of a Final Order resolving any dispute and approving the assumption and assignment of such Executory Contract or Unexpired Lease, the Debtors, with the consent of the Purchaser, reserve the right to reject any Executory Contract or Unexpired Lease which is subject to dispute, subject to the terms and conditions of the Purchase Agreement.

Assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full satisfaction, compromise, settlement, release, and discharge of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption and/or assignment.

E.      *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based upon the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed

5816689.8

with the Notice, Claims, and Solicitation Agent no later than the later of (a) 30 days after the effective date of rejection of such Executory Contract or Unexpired Lease and (b) the Claims Bar Date established in the Chapter 11 Cases.

All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as General Unsecured Claims and may be objected to in accordance with the provisions of Article VI of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

Any Holder of a Claim arising from the rejection of an Executory Contract or Unexpired Lease for which a Proof of Claim was not timely Filed as set forth in the paragraph above shall not (a) be treated as a Holder of a Claim hereunder, (b) be permitted to vote to accept or reject the Plan, or (c) participate in any distribution in the Chapter 11 Cases on account of such Claim, and such Claim shall be deemed fully satisfied, released, settled, and compromised, and be subject to the permanent injunction set forth in Article VIII.F of the Plan, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.

For the avoidance of doubt, payment for any Allowed Claim for rejection damages under any Executory Contract or Unexpired Lease rejected by the Debtors shall be made exclusively from the Plan Escrow by the Plan Administrator.

F.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

The Reorganized Debtors reserve their right to assert that rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases.  Notwithstanding any nonbankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, from counterparties to rejected Executory Contracts or Unexpired Leases.

G.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each assumed or assumed and assigned Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or is rejected under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Estates or the Reorganized Debtors have any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtors shall have 90 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

5816689.8

I.       *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, notwithstanding anything to the contrary in the Plan or otherwise.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.       *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided in the Plan, each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class from the Plan Administrator on or as soon as reasonably practicable after the Effective Date, but in no event later than the Distribution Date.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.  Holders of Allowed Claims shall be entitled to all dividends, accruals, and any other distributions on, and proceeds of, the distributions provided for herein, from and after the Effective Date, regardless of whether such distributions (or the proceeds thereof) are delivered on or at any time after the Effective Date.  Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any postpetition interest on such Claim to the extent payable in accordance with the Plan.  The New Interests shall be deemed to be issued as of the Effective Date to the Holders of Claims entitled to receive such securities or instruments hereunder without the need for further action by any Plan Administrator, including the issuance and/or delivery of any certificate evidencing any such shares, units, or interests, as applicable.

Until the first anniversary of the Effective Date, the Plan Administrator shall make distributions under the Plan at least once each quarter.  Thereafter, the Plan Administrator shall make distributions at such times as determined by the Plan Administrator in its reasonable judgment.

B.       *Distributions on Account of Obligations of Multiple Debtors*

For all purposes associated with distributions under the Plan, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single distribution under the Plan.  Any such Claims against the Debtors shall receive the treatment set forth in Article III of the Plan.  Any such Claims shall be released and discharged pursuant to Article VIII.G of the Plan and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code; <u>provided</u> that, for the avoidance of doubt, this shall not affect the obligation of each and every Debtor to pay U.S. Trustee Fees until such time as a particular case is closed, dismissed, or converted.

C.       *Distributions Generally*

All distributions under the Plan that are to be made on the Effective Date shall be made by the Plan Administrator unless otherwise specified herein.  The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties.

D.     *Rights and Powers of Plan Administrator and Reorganized Debtors*

     1.     <u>Powers of the Plan Administrator and Reorganized Debtors</u>

The Plan Administrator may be one or more employees of any of the Reorganized Debtors (but shall not be regarded as acting for or having any authority to act on behalf of the Reorganized Debtors) and shall be empowered to, as applicable:  (a) take all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated under the Plan and the Purchase Agreement; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Plan Administrator by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Plan Administrator to be necessary and proper to implement the provisions hereof.

The Plan Administrator shall only be required to act and make distributions in accordance with the terms of the Plan and shall have no (x) liability for actions taken in accordance with the Plan or in reliance upon information provided to it in accordance with the Plan, or (y) obligation or liability for distributions under the Plan to any party who does not hold an Allowed Claim at the time of distribution or who does not otherwise comply with the terms of the Plan.

The Plan Administrator shall be indemnified from the Plan Escrow funds for any loss, cost, expense or liability (including attorney fees) incurred in the good faith discharge of its obligations under the Plan.

Notwithstanding anything herein to the contrary (including without limitation anything in Article VII herein), on and after the Effective Date, the Reorganized Debtors shall have the exclusive right to prosecute, settle, compromise, or object to any Claims set forth in Article III.B.5(b)(ii) hereof, and shall retain all rights and defenses the Debtors had with respect to any Claim, including without limitation all rights of setoff and/or recoupment. The Reorganized Debtors may request that the Plan Administrator object to any Claims to be paid pursuant to Article III.B.5(b)(ii) hereof, and the Plan Administrator shall comply with such request; provided that the Reorganized Debtors shall compensate the Plan Administrator for all reasonable costs incurred by the Plan Administrator in prosecuting such objection.

     2.     <u>Expenses Incurred On or After the Effective Date and Compensation of Plan Administrator</u>

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Plan Administrator after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) as approved by the Reorganized Debtor shall be made by the Plan Administrator in Cash exclusively from the Plan Escrow.  The Plan Administrator may utilize funds from the following sources to pay such expenses and compensation authorized hereunder: (i) Plan Escrow funds remaining after payment of all classified and unclassified Claims and Interests (other than Classes 9-13); (ii) distributions not made from the Plan Escrow pursuant to Article VI.F.3 (De Minimis Distributions); and (iii) any distributions not claimed pursuant to Article VI.F.4 (Undeliverable and Unclaimed Funds).

E.     *Distributions on Account of Claims Allowed After the Effective Date*

     1.     <u>Payments and Distributions on Disputed Claims</u>

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

     2.     <u>Special Rules for Distributions to Holders of Disputed Claims</u>

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Reorganized Debtors, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial

distributions shall be made with respect to any Disputed Claim until the Disputed Claim has become an Allowed Claim or has otherwise been resolved by settlement or Final Order.

F.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

    1.    Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed and when making distributions on or after the Effective Date, the Plan Administrator shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. The Plan Administrator shall have no obligation to recognize any transfer of any such Claims occurring after the close of business on the Distribution Record Date and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date.

    2.    Delivery of Distributions in General

Except as otherwise provided herein, the Plan Administrator shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' books and records as of the date of any such distribution; provided that, except as expressly provided in the Purchase Agreement or the Plan, the manner of such distributions shall be determined at the discretion of the Plan Administrator; and provided, further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder. If a Holder holds more than one Claim in any one Class, all Claims of the Holder will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

    3.    De Minimis Distributions; Minimum Distributions and Unclaimed Funds

No distribution of Cash payment valued at less than $100.00, in the reasonable discretion of the Plan Administrator, shall be made to a Holder of an Allowed Claim or Interest on account of such Allowed Claim or Interest.

    4.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Plan Administrator has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days from the date of distribution. After such date, notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary, all unclaimed property or interests in property shall revert to the Reorganized Debtors and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

    5.    Manner of Payment Pursuant to the Plan

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Plan Administrator by check or by wire transfer.

G.    *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Plan Administrator shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending

receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties

The Debtors and, on and after the Effective Date, the Plan Administrator, shall reduce a Claim, and such Claim shall be disallowed (or partially disallowed, as the case may be) without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim has received payment on account of such Claim from a Person or Entity that is not a Debtor or has received payment on such Claim during the pendency of the Bankruptcy Case from the Debtors.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to Plan Escrow to the extent the Holder's total recovery on account of such Claim from the third-party and under the Plan exceeds the Allowed amount of such Claim as of the date of any such distribution under the Plan.

2.    Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Notwithstanding anything herein to the contrary (including, without limitation, Article VIII), nothing shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors, the Reorganized Debtors, or any other Entity may hold against insurers under any policies of insurance or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.
PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS**

A.    *Resolution of Disputed Claims*

1.    Allowance of Claims

Subject in all respects to Article VI.D.1 herein, on or after the Effective Date, the Plan Administrator on behalf of the Estates shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim Allowed as of the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

5816689.8

2.      Prosecution of Objections to Claims

Subject in all respects to Article VI.D.1 herein, (a) on and after the Effective Date, the Plan Administrator shall have the exclusive authority to File objections to Claims, settle, compromise, withdraw, or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; and (b) from and after the Effective Date, the Plan Administrator may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court.

3.      Claims Estimation

Subject in all respects to Article VI.D.1 herein, the Debtors, prior to the Effective Date, and the Plan Administrator, on and after the Effective Date, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including section 502(c) of the Bankruptcy Code, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute the Allowed amount of such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 14 days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

B.      *Disallowance of Claims*

All Claims of any Entity from which property is sought by the Debtors under section 542, 543, 550, or 553 of the Bankruptcy Code or that is an alleged transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed until and unless such Entity or transferee has turned over such property to the Reorganized Debtors.

**EXCEPT AS OTHERWISE AGREED BY THE PLAN ADMINISTRATOR OR BY THE REORGANIZED DEBTORS, AS APPLICABLE, HOLDERS OF CLAIMS ON ACCOUNT OF ANY AND ALL PROOFS OF CLAIM FILED AFTER THE CLAIMS BAR DATE SHALL NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH PROOF OF CLAIM IS ALLOWED BY A FINAL ORDER OF THE BANKRUPTCY COURT.**

C.      *Amendments to Claims*

On or after the Effective Date, except as otherwise provided by the Plan, a Claim may not be amended without the prior authorization of the Bankruptcy Court or the Plan Administrator, and any such unauthorized new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

# ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    *Discharge of Claims and Termination of Interests; Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, compromise, settlement, release, and discharge, effective as of the Effective Date, of all debt (as such term is defined in section 101 of the Bankruptcy Code) that arose before the Effective Date, any debts of any kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, and the rights and Interests of any Holders of Interests whether or not: (1) a Proof of Claim based on such debt or Interest is Filed; (2) a Claim or Interest based upon such debt is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as provided for under section 1141(d)(6) of the Bankruptcy Code.

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, including Article VI.D.1 herein, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against the Debtors and their Estates and Causes of Action against other Entities.

B.    *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, and subject in all respects to Article VI.D.1 herein, the Plan Administrator reserves the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

C.    **Release by the Debtors**

**Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, for the good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, the Released Parties are deemed released and discharged by the Debtors and their estates from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of any Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, their estates, or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim or interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of claims and interests prior to or during the Chapter 11 Cases, any agreements to support the Plan, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Purchase**

33

Agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of this Article VIII.C of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan and shall constitute the Bankruptcy Court's finding that this Article VIII.C of the Plan is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by this Article VIII.C of the Plan; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Plan Administrator and Reorganized Debtors asserting any Claim or Cause of Action released pursuant to this Article VIII.C of the Plan.

D.    *Release by Holders of Claims and Interests*

Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, the Releasing Parties are deemed to have released and discharged the Debtors, the Reorganized Debtors, and their Estates and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted against or on behalf of any Debtor or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases,  the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of claims and interests prior to or in the Chapter 11 Cases, any agreements to support the Plan, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Purchase Agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of this Article VIII.D of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan and shall constitute the Bankruptcy Court's finding that this Article VIII.D of the Plan is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by this Article VIII.D of the Plan; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Entities subject to this Article VIII.D of the Plan asserting any claim or cause of action released pursuant to this Article VIII.D of the Plan.

E.    *Exculpation*

Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, none of the Exculpated Parties, shall have or incur any liability for any claim, cause of action, or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Cases, any agreements to support

34

the Plan, the negotiation, formulation, or preparation of the Plan or any contract, instrument, document, or other agreement entered into pursuant thereto, including the Purchase Agreement, or any distributions made pursuant to or in accordance with the Plan, including the issuance of the New Interests; **provided** that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

F.    *Injunction*

Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to the Plan, compromised and settled pursuant to the Plan, or are exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors or the Released Parties or their respective property (collectively, the "**Enjoined Actions**") on account of such Claim or Interest:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such released, compromised, settled, or exculpated claim or interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such entities or the property or the Estates of such entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such entities or against the property of such entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated claims or interests unless such entity has timely filed a proof of claim with the Bankruptcy Court preserving such right of setoff, subrogation, or recoupment; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such released, compromised, settled, or exculpated claims or interests.  Any Entity receiving a distribution under the Plan on account of any Claim or Interest shall be deemed to have waived any right to such Claim or Interest as against any third party and shall be enjoined from pursuing all rights or remedies to recover such Claim or Interest as against any Entity; **provided** that the foregoing Enjoined Actions expressly excludes (and, therefore, does not enjoin) any actions against any Released Party to enforce obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

G.    *Purchaser Injunction*

In addition to the injunction set forth under Article VIII.F hereof, on the Confirmation Date and effective as of the Effective Date, all Claims or other Causes of Action that may be asserted against the Purchaser or the Reorganized Debtors or their respective property shall be permanently released pursuant to the Plan, and all Entities shall be enjoined from taking any Enjoined Action in relation thereto or otherwise asserting such Claims or Causes of Action, and any such Claims or Causes of Action shall be paid or treated pursuant to the terms of the Plan.

Notwithstanding anything herein to the contrary and for the avoidance of doubt, other than solely with respect to distributions under Article III.B.5(b)(ii) hereof, there shall be no recourse of any Entity, including any Holder of a Claim, against any of the Reorganized Debtors for any distributions or any other payments to be made under and/or pursuant to the Plan, which distributions and/or payments shall be provided solely from the Plan Escrow by the Plan Administrator.

H.    *Waiver of Statutory Limitations on Releases*

Each Releasing Party in each of the releases contained in the Plan (including under Article VIII of the Plan) expressly acknowledges that although ordinarily a general release may not extend to claims which the Releasing Party does not know or suspect to exist in his favor, which if known by it may have materially

35

**affected its settlement with the party released, each Releasing Party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code Section 1542. The releases contained in Article VIII of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.**

I.      *Setoffs*

Except as otherwise provided herein, including Article VI.D.1 herein, the Plan Administrator, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off against any Allowed Claim or Interest (which setoff shall be made against the Allowed Claim or Interest, not against any distributions to be made under the Plan with respect to such Allowed Claim or Interest), any Claims, rights, and Causes of Action of any nature that any Debtor may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise), and any distribution to which a Holder is entitled under the Plan shall be made on account of the Claim or Interest, as reduced after application of the setoff described above. In no event shall any Holder of any Claim or Interest be entitled to set off any Claim or Interest against any Claim, right, or Cause of Action of the Debtors unless such Holder obtains entry of a Final Order entered by the Bankruptcy Court authorizing such setoff or unless such setoff is otherwise agreed to in writing by the Plan Administrator and such Holder of a Claim or Interest; <u>provided</u> that, where there is no written agreement between the Plan Administrator and a Holder of a Claim authorizing such setoff nothing herein shall prejudice or be deemed to have prejudiced the rights of the Plan Administrator to assert that any Holder's setoff rights were required to have been asserted by motion to the Bankruptcy Court prior to the Effective Date.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B of the Plan:

1.      The Bankruptcy Court shall have approved the Disclosure Statement, in form and substance acceptable to the Debtors and the Purchaser as containing adequate information and entered the Disclosure Statement Order in form and substance reasonably acceptable to the Debtors and the Purchaser;

2.      the Confirmation Order, in form and substance acceptable to the Debtors and the Purchaser shall have been duly entered and shall not be subject to a stay;

3.      all closing conditions and other conditions precedent in the Purchase Agreement shall have been satisfied or waived in accordance with the terms thereof;

4.      the contribution of the Sale Proceeds to the Plan Escrow and the Professional Fee Escrow shall have occurred;

5.      the New Interests shall have been issued and delivered, as applicable, and all conditions precedent to the consummation of the transactions contemplated therein shall have been waived or satisfied in accordance with the terms thereof and the closing of the transactions contemplated by such agreements shall have occurred;

6.      the New Governance Documents, in form and substance acceptable to the Purchaser, shall be deemed to be valid, binding, and enforceable in accordance with their terms;

7.  the Plan Supplement, including any amendments, modifications, or supplements to the documents, schedules, or exhibits included therein shall be in form and substance reasonably acceptable to the Debtors and the Purchaser and shall have been filed with the Bankruptcy Court pursuant to the terms of the Plan;

8.  all documents and agreements necessary to implement the Plan shall have (a) been tendered for delivery, and (b) been effected or executed by all Entities party thereto, or will be deemed executed and delivered by virtue of the effectiveness of the Plan as expressly set forth herein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

B.    *Waiver of Conditions*

The conditions to Confirmation of the Plan and to the Effective Date set forth in Article IX of the Plan may be waived only by consent of the Debtors and the Purchaser.

C.    *Substantial Consummation of the Plan*

"Substantial consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

D.    *Effect of Nonoccurrence of Conditions to the Effective Date*

If the Effective Date does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void in all respects; and (3) nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Person or Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

**ARTICLE X.**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

A.    *Modification and Amendments*

Subject to the limitations contained herein, the Debtors, with the consent of the Purchaser, reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors, subject to the reasonable consent of the Purchaser, expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X of the Plan.

B.    *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

5816689.8

C.      *Revocation or Withdrawal of the Plan*

The Debtors reserve the right, after consultation with the Purchaser, to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void in all respects; (3) the Purchase Agreement shall be terminated, in the Purchaser's sole discretion, and all amounts due to the Purchaser by the Debtors under the Purchase Agreement shall be immediately due and owing; and (4) nothing contained in the Plan or Disclosure Statement shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, to the extent legally permissible, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.   decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.   resolve any matters related to:  (a) the assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Costs pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Plan Administrator or the Reorganized Debtors, as applicable, amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.   ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.   adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.   enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Purchase Agreement;

7.   enter and enforce any order related to the Sale Transaction or otherwise in connection with any sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

38

8.  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9.  issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, Exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

11. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.H.1 of the Plan;

12. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

13. determine any other matters that may arise in connection with or relate to the Plan, the New Governance Documents, the Disclosure Statement, the Confirmation Order, the Purchase Agreement, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

14. adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

15. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

16. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

17. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

18. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

19. hear and determine all disputes involving the existence, nature, or scope of all releases set forth herein, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

20. enforce all orders previously entered by the Bankruptcy Court;

21. to resolve any disputes arising under the New Governance Documents;

22. hear any other matter not inconsistent with the Bankruptcy Code;

23. enter an order concluding or closing the Chapter 11 Cases; and

24. enforce the injunction, release, and Exculpation provisions set forth in Article VIII of the Plan;

5816689.8

# ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a final decree closing the Chapter 11 Cases is issued, whichever occurs first.

D.    *Dissolution of the Committee*

On the Effective Date, the Committee, if any, shall dissolve and all members, employees, or agents thereof, including the Committee Members, if any, shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases, except the Committee will remain intact solely with respect to the preparation, filing, review, and resolution of applications for Accrued Professional Compensation Claims. On the Effective Date, subject to the proviso above, the Committee Members shall be released and discharged from all rights and duties from or related the Chapter 11 Cases. Other than with respect to those matters identified in the proviso above, the Debtors, the Plan Administrator, the Reorganized Debtors, or the Purchaser, as applicable, shall no longer be liable or responsible for paying any fees or expenses incurred after the Effective Date by the Committee, the Committee Members, or any advisors to the Committee. For the avoidance of doubt, the Plan Administrator shall pay, exclusively from the Plan Escrow, the reasonable and documented fees and expenses of the Committee and the Committee's advisors incurred after the Effective Date for the matters set forth in the proviso above.

E.    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or the Purchaser with respect to the Holders of Claims prior to the Effective Date.

5816689.8

F.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.    *Service of Documents*

All notices hereunder shall be deemed given if in writing and delivered, if sent by facsimile, courier, or registered or certified mail (return receipt requested) to the following addresses and facsimile numbers (or at such other addresses or facsimile numbers as shall be specified by like notice):

If to the Debtors, to:

> Assured Pharmacy, Inc.
> 5600 Tennyson Parkway
> Suite 390
> Plano, TX 75024
> Attention:  Robert DelVecchio
> Fax: (972) 473-4034
> E-mail: rdelvecchio@assuredrxservices.com

with a copy to:

> Cox Smith Matthews Incorporated
> 1201 Elm Street
> Suite 3300
> Dallas, TX 75270
> Attention: George Tarpley
> Fax: (214) 698-7899
> E-mail: gtarpley@coxsmith.com

If to the Reorganized Debtors, to:

> Precise Analytical, LLC
> 12015 East 46th Ave, Suite 250
> Denver, CO 80239
> Attention: David Lowenberg, Chairman
> Fax: [•]
> E-mail: [•]

with a copy to:

> Waud Capital Partners L.L.C.
> 300 North LaSalle Street, Suite 4900
> Chicago, Illinois 60654
> Attention: Matthew W. Clary and Mark Flower
> E-mail: mclary@waudcapital.com and mflower@waudcapital.com

with a copy to:

> Kirkland & Ellis LLP
> 300 North LaSalle
> Chicago, Illinois 60654
> Attn.:  Patrick J. Nash, Jr., P.C. and Brad Weiland
> Facsimile:  (312) 862-2200

5816689.8

If to the Plan Administrator, at such addresses as are set forth in the Plan Supplements identifying such persons.

H.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect to the maximum extent permitted by applicable law. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.    *Entire Agreement*

Except as otherwise indicated, on the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations with respect to the subject matter of the Plan, all of which will have become merged and integrated into the Plan on the Effective Date. To the extent the Confirmation Order is inconsistent with the Plan, the Confirmation Order shall control for all purposes.

J.    *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the reasonable consent of the Debtors and the Purchaser; and (3) nonseverable and mutually dependent.

*            *            *            *            *

5816689.8

Respectfully submitted, as of the date first set forth above,

Assured Pharmacy, Inc. (for itself and all Debtors)

By:      */s/ Robert DelVecchio*
Name:    Robert DelVecchio
Title:   President, CEO